By the Court,
Monell, J.
The ground of the plaintiff’s action, as stated in his complaint, and attempted to be proved on the trial, was that the injury to his horses was occasioned by the negligent act of the defendants. It is not now claimed that the defendants are liable for any other reason. The motion to dismiss the complaint was not put upon the ground that the evidence of the plaintiff failed to establish any negligence by the defendants, but on the ground that the defendants had a right to use their own property in any way they thought proper, except where the use was a nuisance. This I do not understand to have been disputed. The judge charged the jury, substantially, that the use of the defendants’ sheds as a shelter for their diseased horses was not a nuisance, and therefore they had a right to use them for such purpose, (Bloom v. City of Utica, 2 Barb. S. C. R. 104,) and no exception was taken to the charge. But every man is responsible for the negligent use of his own property, and the right of enjoyment is limited to a prudent and careful use. (Clark v. Foot, 8 John. 421. Vanderburgh v. Truax, 4 Denio, 464.)
The sheds or pens in which the defendants placed their diseased horses were separated from the plaintiff’s stables by a wooden partition, and the heads of the plaintiff’s and defendants’ horses were towards and near the partition; so that except for the partition they could have come into immediate contact. In the rear of the stables a hoard fence separated the respective lots. It was in evidence that the defendants’ horses gnawed the boards and the fence, and made holes through the partition. One witness testified that the defendants’ horses ate through the partition a hole half a foot in size, which came through upon the manger of the plaintiff’s stable. There was a water tank in the street outside of the defendants’ premises, at which their diseased horses were allowed to drink. The doors or gates were left open, and the horses were suffered to go out: This tank was also used for watering the plaintiff’s horses.
*332 The weight of the evidence is, that the disease which the defendants’ horses had (the glanders) was contagious and not infectious. The holes gnawed by the defendants’ horses through the wooden partition, and into the fence between the lots, afforded a means of easy contact with the virus deposited by the defendants’ horses, and was sufficient to convey the disorder. It was the duty of the defendants to have immediately closed the holes, and to have been vigilant in using all necessary means to prevent the disorder from being conveyed by contact to the plaintiff’s horses. This they do not seem to have done, for the plaintiff himself nailed boards over the holes. The defendants knew the disorder was contagious, and they were bound to exercise all the care that prudence and a rightful regard for the interests of others required, or else to place their horses so remote from the wooden partition that contact would not have been possible.
Again, suffering the defendants’ horses to go to the street tank for water, was not only unnecessary, as they had water in their yard, but it was highly negligent. There could be no. more sure way of communicating the disease. And whatever may have been the right of the defendants to use their premises for hospital purposes, for their diseased horses, they had not the right to let them go at large in the street, or to allow them to drink at a public tank.
This is within the principle established by some of the English cases. (See Hay on Liability, p. 154, and cases cited.)
I am of opinion that there was sufficient evidence of negligence of the defendants to go to the jury, and therefore that the motion to dismiss the complaint was properly overruled.
The learned justice, in submitting the case to the jury, instructed them' that “if the plaintiff’s horses, without any negligence on his part, and before he was aware, or ought, as a careful man, to have known of the existence of. the holes, contracted the disease from the horses of the defendants, and if at the same time the defendants were guilty of negligence, the plaintiff was entitled to recover.” And they were told that they must be satisfied that the defendants knew of the *333 existence of the holes, or that as careful men they ought to have known' of their existence.
The only questions, therefore, in the case which could determine the defendants’ liability, namely, the absence of all negligence on the part of the plaintiff, and the negligence of the defendants, was properly and fairly submitted to the jury, and I can find no reason for disturbing their verdict.
All the requests to charge (although refused to be made in the precise language in which they were submitted,) were substantially made to the jury. A judge is not bound to use the language of a request to charge ; if he gives the substance of it to the jury it is sufficient.
I am in favor of affirming the judgment. To concede the right of the defendants to place a large number of sickly and diseased horses upon their own premises, in immediate contiguity with the neighboring stables of the plaintiff, is conceding all that the defendants can expect, and it is the only concession the law makes. In the enjoyment of that right, they must look to it that their neighbor is not injured by their negligence.